## Case No. 6,117.

### HARRIS v. BURCHAN et al.

[1 Wash. C. C. 191.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1804.

#### EJECTMENT—SURVEY.

1. A survey made and returned, and having every appearance of regularity, must be taken as regular, until the contrary is shown.

2. After a survey has been once regularly made under a warrant, under the directions of the warrantee. although not in conformity with the terms of the warrant, the warrant is functus officio, and cannot afterwards be revived, and a survey made under it.

3. A right by settlement and improvement, if a survey of the land included in it shall be made, under a warrant, by the owner of the settlement and improvement, will be merged in the higher title. But, if the surveyor, without the knowledge of the warrantee, makes such use of the warrant, the rights of the warrantee are not thereby affected.

The defendants set up a title in themselves, as holding under James Potter, and deny the title of the plaintiff [David Harris' lessee], upon the ground that his warrant, calling for particular boundaries, was removed to the land in question, but the survey not actually made. On the 27th July, 1774, the plaintiff obtained a warrant for three hundred acres of land, bounding south on W. M.. T. M., &c., Hickory ridge; north by the foot of a mountain, including a run that sinks at the mountain's foot; east by S. Matlock's survey, and west by vacant lands. On the 30th August, 1783, Wm. M'Clay, the surveyor, returned a survey of this warrant for three hundred and thirty acres; but it neither joins W. M., nor S. Matlock, by two hundred perches; though it would seem, by the plat annexed to the report, that it was bounded on the east by his land. He states. in his return, that the survey was made on the 10th November, 1774. The plaintiff rested his title and right to recover according to the laws of this state; on his warrant and survey, returned into the office. The defendant, Pennington, sets up a title under James Potter, who, before 1773. settled and improved a part of the three hundred and thirty acres; and on the 5th January, 1773, obtained a warrant for one hundred and fifty acres, to include his im-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

provement adjoining the land of T. M., and to include the sapling hickory ground. This warrant was, on the 16th June, 1774, surveyed by Wm. M'Clay, to the southward of the land in possession of Pennington, and the survey was returned into the office in 1783. Upon the return of the plaintiff's survey, Potter entered a caveat against a patent's issuing to the plaintiff; he claiming one hundred and fifty acres of the land, by a prior warrant, founded on settlement and improvement. The board of property, reciting the survey made for Potter, and that it appeared to them, that a survey had been made for Harris, on the 10th November, 1774; and that it was doubtful, whether Potter's improvements had been included in his survey; directed James Harris, another surveyor, to lay down the two surveys, that the board might be enabled to decide this point. A survey was accordingly made in 1783, laying down these two surveys, and the adjoining tracts of land, by which Potter's improvements are placed out of the boundaries of his land; but by M'Clay's survey, the lines would include them. Nothing further was ever done in the caveat. Potter dying some years after it was entered; no steps were taken to carry it on. Burchan, the other defendant, lived within the lines of the plaintiff's survey, but out of the lines claimed by the defendant.

Ingersoll and Duncan, for defendants, contended: 1. That the survey made by M'Clay in 1774, of Potter's warrant, was not conformable to his warrant, because it did not include his improvements, and the hickory sapling ground; and was a fraudulent location of his warrant, to favour the plaintiff, his brother-in-law and friend. To prove that his improvements were not included, they relied upon the diagram made by James Harris in 1783, which leaves them out; and upon the depositions of three or four witnesses, who speak of his improvements in 1774, and say, that when James Harris made the survey in 1783, they were left out. They therefore insist, that Potter had a right to survey his warrant over again in 1783, on the land in question, which he did; and at any rate, his warrant entitled him to the land in question, as against the plaintiff. But they principally relied, for both defendants, that the plaintiff's title was defective; because his warrant called for land very different from that in dispute; and that no actual survey of the land in dispute had taken place; but that it was made without going upon the ground, running the lines, and blazing and marking the trees, agreeably to the instructions of the surveyor general to his deputies. They admitted, that if the warrant be special, it gives a right before survey, to the tract so described; and that the surveyor might, notwithstanding, remove the warrant, and survey it elsewhere, if no intermediate rights accrued to be effected thereby; and that even

in this latter case, an actual survey was not necessary, provided the circumstance of its being made off the ground, and that it was removed, was disclosed to the officer to whom the survey is returned, and that it is then accepted. But in this case, no such disclosure appeared to have been made, and the caveat prevented the acceptance. As to the fact, that the survey was not actually made; they relied upon depositions, proving that the witnesses were with James Harris, when he made the survey in 1783, and that they saw neither blazes nor marks, except where they came to the lines of old surveys. That the plat, returned by M'Clay, states it to adjoin S. Matlock; whereas it was two hundred perches from it; a mistake no otherwise to be accounted for, than by supposing it to be a chamber survey, and that Wm. M'Clay, in his deposition, taken in this cause, important as he knew the fact to be, does not state that the survey was actually made. The case of Miles' Lessee v. Penner [unreported], decided by Judge Smith, on the circuit, was cited: viz. that in case of a removed warrant, unless an actual survey took place, the plaintiff claiming under it could not recover in ejectment. That where there are many warrants put into the hands of the surveyor, if he runs the outer lines of the whole, he may cut it up in the interior as he pleases. That where the warrant is special, the survey of the same land need not be made on the ground.

On the other hand, it was contended, that it sufficiently appears to the jury, that the survey was actually made on the ground, although the presumption being in favour of the return, evidence to impeach it should be produced. The circumstances relied on are: the caveat in 1782, in which Potter does not state this as a ground of objection; the declaration of the board of property, twenty years ago, and only ten after the survey was made, that it appeared to them, that the survey had been made on the 10th November, 1774; that if, in fact, it were not made, it was wonderful that the land had not been since appropriated by others. Strange, that a man in his chamber, could plot an irregular figure like the present; more likely that he should lay down straight lines; that he could include a spring or run, called for in the warrant; that as to its calling for Matlock's land, it does not certainly follow, upon looking at the plat, that he intended to say, that Matlock adjoined it; and if he did, it must have been a mistake, from his not knowing Matlock's lines. They insisted, that even if the jury should be satisfied that the survey was not actually made on the ground, yet it stood accepted, notwithstanding the caveat.

WASHINGTON, Circuit Justice (charging jury). The questions which I shall first consider are, has James Potter a title to the

land in possession, of both the defendants, or either; and secondly, has the plaintiff a title? As to the land possessed by Burchan, it is admitted, that Potter's warrant for one hundred and fifty acres, or his survey in 1783, would not include it; so that if the plaintiff has a title, he must succeed against Burchan, whatever may be Potter's title, in respect of the land held by Pennington. As to this, it appears that a survey was made of Potter's warrant, by M'Clay, in June, 1774, and that the survey was returned into the office in 1783; and therefore having all the appearances of regularity, it must be taken prima facie to be regular, unless the contrary appears. To prove it irregular, and therefore not binding on Potter, the testimony of three or four witnesses is relied on; who state, they attended J. Harris' survey in 1783, and that Potter's improvement was not comprehended in the survey. But it is worthy of remark; that those witnesses do not speak of M'Clay's survey in 1774; but refer to the lines as run by Harris in 1783; and by comparing Harris's survey with M'Clay's, which it professes to follow, or ought to have followed; it appears that if one of the lines of Harris's survey had been extended as far as M'Clay's ran, the improvement, as laid down in Harris's diagram, would have been included. Against this evidence, is opposed the testimony of William M'Clay himself, who states; that Potter himself pointed out the improvement and hickory sapling on the ground, and that they were included, and that he was present at the survey. Now, most clearly, if Potter chose to locate his warrant as it was surveyed, even though the improvement had been left out; it does not lie in his mouth now, to say that it was not properly located by survey. And if M'Clay's testimony is believed by the jury; and unless they are satisfied that the warrant was improperly surveyed; then in point of law, Potter had, and of course the defendant Pennington has no title to the land, for which this ejectment is brought; because if the warrant was once properly surveyed, and returned into the office, it was functus officio; it merged the prior title by improvement and warrant, and the same warrant could not afterwards be surveyed on the land in question, or on any other vacant land. If, on the other hand, the jury should be satisfied that Potter's warrant was, without his knowledge, or against his consent, removed by the surveyor, to lands to which it did not relate; then the survey was not binding on Potter; his title stands now on the ground it did prior to that survey, and being prior to the plaintiff's warrant, his title is the best, to one hundred and fifty acres, to be laid off in a reasonable shape, so as to include his improvement. You are the proper and sole judges of the credibility of witnesses, and the weight of evidence, and must ascertain this fact; if it be in favour of Potter's pretensions, your verdict ought to be in favour of the defendant, Pennington; if otherwise, in favour of the plaintiff.

The next question is, has the plaintiff a title? because, if he has not, then he cannot recover, however weak the defendant's may be, and this question involves the interest of both defendants. The questions of law raised as to this point, I forbear to give any opinion about, because, upon the fact, it will perhaps be unnecessary; and because the points are of extreme importance—viz. whether, in a case like this, the want of actual survey is sufficient to defeat the plaintiff in ejectment; and whether upon the principles conceded by the defendant's counsel, the survey, quoad every thing not stated as the ground of the caveat, (which does not oppose the survey, but the issuing of a patent for one specified reason,) is not to be considered as accepted; and whether it is incumbent on the party claiming under the survey, to prove that all the necessary circumstances were disclosed by the surveyors. But how is the fact? I have already stated the evidence on both sides, and the arguments urged by each. That the survey is to be presumed regular, until the contrary appear, is a clear principle. Extremely mischievous would be the consequences, if a man, having a paper title, apparently regular, should be compelled, in asserting his title, to prove that the public officers performed their duty. It would be substituting a title, dependent upon the uncertain tenure of men's memories, for a written one. You will therefore consider and weigh the evidence, and the credit of the witnesses, and you must be perfectly satisfied in your consciences, that the survey was not actually made, before you can find a verdict grounded on that as a fact. If the survey was regularly made, then most clearly Potter could not survey, under his warrant in 1783, the land in question, held by Pennington; even although you should be of opinion that M'Clay's survey under his warrant, in 1774, was irregular, and not binding upon him; and in this case, your verdict, as to Burchan, must of course be for the plaintiff; and as to Pennington, also, unless you should be of opinion, not only that his warrant was improperly laid in 1774, but that the plaintiff's also was irregularly surveyed, by his not going on the ground.

The jury found for the plaintiff.